Case 4:20-cv-02132   Document 69   Filed on 05/02/22 in TXSD   Page 1 of 10

United States District Court
Southern District of Texas
**ENTERED**
May 02, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **INLAND PIPE REHABILITATION, LLC,** *et al.*, | § § § |
| Plaintiffs, | § § |
| VS. | §   CIVIL ACTION NO. 4:20-CV-02132 |
| **ERICK J. RODRIGUEZ TORO,** *et al.*, | § § § |
| Defendants. | § |

**MEMORANDUM & ORDER**

On April 28, 2022, the Court held a hearing on Plaintiffs and Defendants' competing motions for summary judgment. (Docs. 54, 55.) The Court took the motions under advisement. It now **GRANTS** summary judgment in favor of Plaintiff for the reasons set forth below.

## I.   BACKGROUND

### A.   Factual Background

The facts are generally uncontested except where otherwise noted below.

Plaintiff Inland Pipe is a Delaware LLC with its principal place of business in Georgia and several offices in Texas, including in Houston. Plaintiff Robert McCrae is a Georgia resident and the Chief Executive Officer of Inland Pipe. Defendant Erick J. Rodriguez & Asociados, C.R.L. ("ER&A") is an LLC based in Puerto Rico. Its President and General Manager is Defendant Erick J. Rodriguez Toro, who is also a resident of Puerto Rico.

In June 2016, Inland Pipe leased a wet-out trailer (the "Equipment") from ER&A. Pls.' Exhibit 1, Declaration of Robert McCrae ¶ 17, 24. The Lease Agreement's provisions included the following:

**THIS LEASE AGREEMENT** *("Agreement") is made and effective this day 1st of june, 2016 for the City of Houston Wealden Bender Drive 72" Interceptor project in Woodlands Texas, by and between Erick J. Rodriguez & Asociados, CRL. ("Lessor") and Inland Pipe Rehab, LLC SS# 26- 0457444 ("Lessee"). Lessor and Lessee may hereafter be collectively referred to as the "Parties."*

*[…]*

### 2. Equipment Inspection:
*Lessor hereby agrees to provide to Lessee equipment inspection described on **SCHEDULE B** which is attached here to and incorporated by reference herein.*

*[…]*

### 4. TERM
*Unless otherwise agreed in writing, the term of this Agreement shall commence on the Effective Date and be in effect from portal to portal and shall expire when the Equipment described on **SCHEDULE A** has been received by Lessor at Lessor's place of business in Juana Dias, Puerto Rico and payment has been received by Lessor for the Services described on **SCHEDULE B**. This Agreement may only be terminated prior to the Expiration Date or extended beyond the Expiration Date with the prior written consent of Lessor.*

### 5. SHIPPING
*Unless otherwise agreed in writing, Lessor will pack all Equipment at Lessee's cost. Lessee will arrange shipping with a commercial forwarder, approved by Lessor, to transport the Equipment from Lessor's place of business to the Location specified in **SCHEDULE A**. Shipments will be Ex Works Seller's facility and all risk of loss or damage during shipment, both to and from the Location specified in **SCHEDULE A**, shall be borne by Lessee. Any export or other special packing or special transportation charges shall be charged to Lessee.*

### 6. CANCELLATION
*Lessee has no right to cancel this order, in whole or in part, absent the prior written agreement of Lessor.*

### 7. SURRENDER
*Upon the expiration or earlier termination of this Agreement, Lessee shall return the Equipment to Lessor in good repair, condition and working order by delivering the Equipment at Lessee's cost and expense to such place as Lessor shall specify on **SCHEDULE A**.*

*[…]*

> *24. GOVERNING LAW*
> *This Agreement shall be construed and enforced according to laws of the Commonwealth of Puerto Rico, Federal District Court of Puerto Rico without regard to conflicts of laws principles.*
>
> *25. WAIVER*
> *Failure by Lessor to assert all or any of its rights upon any breach of this Agreement shall not be deemed a waiver of such rights either with respect to such breach or any subsequent breach, nor shall any waiver be implied from the acceptance of any payment or service. No waiver of any right shall extend to or affect any other right Lessor may possess, nor shall such waiver extend to any subsequent similar or dissimilar breach.*

Doc. 55-1.

The Equipment was used by Inland Pipe for a project in Northeast Houston ("the Woodlands Project") from June 2016 through November 2016. Pls.' Exhibit 1, Declaration of Robert McCrae ¶ 27. Between June 2016 and November 2016, while the Equipment was being used for the Woodlands Project, ER&A sent regular invoices to Inland Pipe via email for the agreed upon $5,000 monthly rental charges. Pls.' Exhibit 1C, *in globo* invoices. Between June 2016 and November 2016, ER&A sent several emails to Inland Pipe inquiring as to the status of payment of its invoices. Pls.' Exhibit 4, *in globo* correspondence. Inland Pipe paid all ER&A invoices that it received, totaling $30,000. Pls.' Exhibit 1, Declaration of Robert McCrae ¶ 29; Pls.' Exhibit 5.

The Woodlands Project was completed in November 2016. Pls.' Exhibit 1, Declaration of Robert McCrae ¶ 27. After the Equipment was no longer being used on the Woodlands Project in November 2016, Inland Pipe stopped receiving rent invoices from ER&A and emails demanding payment. *Id.* ¶ 38. The parties had no communication for forty-two (42) months between November 2016 and May 2020. *Id.* ¶ 39. There is no evidence that ER&A requested the return of its Equipment between 2016 and 2020. *Id.* ¶ 37; Pls.' Exhibit 6, ER&A's First Supplemental

Responses to Inland Pipe's Requests for Admissions, Nos. 2-5. The parties dispute whether ER&A ever stated orally or in writing that Inland Pipe could keep the Equipment without payment of rent.

Inland Pipe alleges that it never used the specialized Equipment again. *Id.* ¶ 34. Inland Pipe kept the Equipment in storage at its own cost until 2020. *Id.* ¶ 35-36. On October 30, 2016, ER&A emailed Inland Pipe the following: "Things are slow in PR can we put this unit to work?" Pls.' Exhibit 1F. James Stansberry,[1] on behalf of Inland Pipe, responded that Inland Pipe was installing the last of the pipe on the Woodlands Project but that the parties needed to "talk about the wetout trailer and figure out future use and what we can do with it." *Id.*

Inland Pipe also presents internal communications apparently expressing the same understanding. On November 21, 2016, Greg Baggett sent an email to Doug Naylor asking, "Does anyone know if it's still on rent? Let's make sure not to keep it on rent any longer than we have to." Pls.' Exhibit 1G. Naylor responded that the "trailer is no longer being rented." *Id.* Moreover, on December 5, 2016, James Stansberry wrote to Robert McCrae: "We still have the wetout trailer from Puerto Rico but rental has stopped since we are not using, right now Eric Rodregas *[sic]* is thinking about selling to us, he has no use for it in Puerto Rico." Pls.' Exhibit 1H.

On May 12, 2020, ER&A's Puerto Rican counsel sent a letter addressed to Plaintiff Robert McCrae claiming that Inland Pipe owed it $450,000 in "unpaid rent." Pls.' Exhibit 1J. In late 2020, Inland Pipe coordinated the return of the Equipment to Puerto Rico at its own expense. Pls.' Exhibit 7. Delivery to ER&A was delayed due to ER&A's failure to provide logistical shipping information, as the shipper would not release the Equipment for final transport to ER&A's yard until ER&A provided that information. Pls.' Exhibit 9 (Correspondence from counsel for Inland

---

[1] Mr. Stansberry was ER&A's primary contact at Inland Pipe. However, he cannot testify as he is now deceased.

Pipe to counsel for ER&A outlining the various requests made to ER&A); *see also* Pls.' Exhibit 10, emails *in globo*.

### B. Procedural History

Plaintiffs filed this case seeking a declaratory judgment that they are not liable for any rent on the equipment after the completion of project for which the equipment was used. Defendants counterclaimed that Plaintiffs are liable for $280,000 in damages, including unpaid rent, under Puerto Rico contract and tort law.

## II. MOTION FOR SUMMARY JUDGMENT

### A. Legal Standards

#### 1. Summary Judgment

On a motion for summary judgment, the movant can succeed only if there is "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "A fact is material only when it might affect the outcome of the suit under the governing law, and a fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

"If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake,* 47 F.3d 1459, 1462 (5th Cir. 1995). In deciding a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

#### 2. Puerto Rico Contract Law

The parties do not dispute that the Lease Agreement contains a provision calling for the application of Puerto Rico law.

Under Puerto Rico law, "[t]o properly assert a claim for breach of contract, a party must sufficiently allege: (1) a valid contract, (2) breach of that contract, and (3) resulting damages." *First Medical Health Plan, Inc. v. CaremarkPCS Caribbean, Inc.,* 681 F.Supp.2d 111, 116 (D.P.R. 2010). Further, Article 1802 of the Puerto Rico Civil Code provides that "[a] person who by an act or omission causes damage to another party through fault or negligence shall be obliged to repair the damage so done." 31 L.P.R.A. § 5141.

Under Puerto Rico law, "[t]he intention of the parties is the essential test provided in the Civil Code to fix the scope of contractual obligations." *Merle v. West Bend Co.*, 97 D.P.R. 403 (1969) (cited in *Puerto Rico Electric Power Authority v. Liberty Mutual Ins. Co.*, 2021 WL 3293622, *3 (D.P.R. 2021)). The test of the intention of the parties "is so essential in the interpretation of the contracts that the Code proclaims its supremacy in providing that the evident intention of the parties shall prevail over the words, even when the latter would appear contrary to the intention." *Id.* at 409-10; 31 P.R. Laws Ann. § 3472. Under Article 1233, "[i]f the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed." 31 P.R. Laws Ann. § 3472; *Marina Indus., Inc. v. Brown Boveri Corp.*, 14 P.R. Offic. Trans. 86, 94-98 (1983). An agreement is "clear" when it can be understood in one sense alone, without leaving any room for doubt, controversies or difference of interpretation." *In re Advanced Cellular Sys., Inc.*, 483 F.3d 7, 12 (1st Cir. 2007) (*quoting Catullo v. Metzner*, 834 F.2d 1075, 1079 (1st Cir. 1987)).

If a court has doubts that the parties' intent is expressed in the contract's text, it should investigate the spirit and purpose of the transaction, the overall conduct of the interested parties, and the concurring circumstances. *Punta Lima, LLC v. Punta Lima Development Company, LLC*, 425 F. Supp. 3d 87, 100 (D.P.R. 2019); *Marcial v. Tome*, 144 D.P.R. 522, 1997 WL 871183

(1997) (in leading case in contract interpretation in Puerto Rico, holding that "whenever we have doubted the common and evident intent of the parties, we have not hesitated to thoroughly examine the intent of the parties"); *see also Puerto Rico Telephone Co., Inc. v. SprintCom, Inc.*, 662 F.3d 74, 90-91 (1st Cir. 2011) (stating that the Puerto Rico Supreme Court has ruled that, even when the terms of the contract appear to be clear, if the Court has any doubt as to the parties' intention, the Court will examine the circumstances prior, during, and after the execution of the contract to determine the parties intention). After all, if the contract language "should appear contrary to the evident intention of the contracting parties, the intention should prevail." 31 P.R. Laws Ann. § 3472; *see also Autogermana, Inc. v. BMW of North America, Inc.*, 38 F. Supp. 3d 230, 238 (D.P.R. 2014) ("The terms of a contract should be read as a whole and conflicts must be read to harmonize and serve the intent of the parties."). Specifically, "[i]n order to judge as to the intention of the contracting parties, attention must principally be paid to their acts, contemporaneous and subsequent to the contract." 31 P.R. Laws Ann. § 3472; *Rojas-Buscaglia v. Taburno-Vasarhelyi*, 113 F. Supp. 3d 534, 539-40 (D.P.R. 2015).

Puerto Rico recognizes the doctrine of "one's own acts," wherein a party is estopped by its own acts from going against the representations it has previously made. The party invoking the doctrine of "one's own acts" must present evidence of (a) specific conduct, (b) which has brought about an apparent situation capable of influencing the conduct of others, and that (c) another party who has acted in good faith and in reliance thereon would be prejudiced should its trust be defrauded. *Corraliza Rodriguez v. Banco Desarrollo Economico,* 2001 WL 40070 (Jan. 9, 2001).

Finally, under Puerto Rico law, the mitigation doctrine of avoidable consequences is a fundamental rule of damages requiring the injured party to take advantage of reasonable

opportunities to minimize his damages and avoid or prevent loss. *Gener–Villar v. Adcom Group, Inc.*, 560 F.Supp.2d 112, 133–134 (D.P.R. 2008) (citations omitted). Under this doctrine, an injured party with an otherwise valid cause of action who fails to mitigate his damages may not recover those damages shown to have resulted from his failure to use reasonable efforts to avoid or prevent the loss. *Id*.

### B. Discussion

Defendants/Counter-Plaintiffs claim that this case is a simple one that can be decided based on the contractual language alone. They argue that: (1) the Lease Agreement unambiguously provided that it remained in effect until Plaintiffs returned the Equipment; (2) the Lease Agreement did not mandate the sending of invoices to collect on the monthly rent payments owed; and (3) because Plaintiffs did not return the Equipment until September 2, 2021, and had not been paying rent since November 2016, they are liable under Puerto Rican contract and tort law for all unpaid rent during this period at the agreed rate of $5,000 ($280,000 for 56 months total).

Plaintiffs counter that the terms of the contract are at least ambiguous, if not explicit that the agreement expires upon completion of the Woodlands Project. On the one hand, Defendants focus on Paragraph 4, which provides that the agreement "shall expire when the Equipment . . . has been received by Lessor at Lessor's place of business in Juana Dias, Puerto Rico." On the other hand, Plaintiffs emphasize the introductory paragraph of the agreement, which states that it is "for the City of Houston Wealden Bender Drive 72" Interceptor project in Woodlands Texas." Therefore, Plaintiffs argue that it is appropriate to look at the intention of the parties.

The evidence strongly suggests, Plaintiffs contend, that Defendants did not have use for the Equipment in Puerto Rico and thus wanted Plaintiffs to keep it in storage in Texas in case it could be of use on a future project. They also assert that the Lease Agreement contemplated that

8 / 10

ER&A would provide monthly "Equipment Inspection" for Inland Pipe while the Equipment was being used, but that ER&A never provided such services. Plaintiffs state that they do not base any cause of action on this fact, but only raise it to support their position that the agreement was never followed to the letter, making it necessary to look outside its four corners. Moreover, Plaintiffs argue that any ambiguities should be read against ER&A because ER&A drafted the agreement.

Additionally, Plaintiffs assert that ER&A's own conduct evidenced that rent was not accruing once the Woodlands Project ended, since ER&A immediately stopped sending invoices or emails demanding payment for four years. Plaintiffs argue that they relied on this conduct by Defendants, which are now estopped from seeking unpaid rent under Puerto Rico's "one's own acts" doctrine. Defendants counterargue that, under the (non)waiver provision of the agreement, Paragraph 25, the fact that ER&A did not issue a monthly invoice did not constitute a waiver of its right to recover unpaid monthly payments.

Finally, Plaintiffs argue that ER&A's failure to mitigate bars its claims. To support this position, Plaintiffs again note that ER&A never issued invoices or demanded payment over four years. They argue that it is absurd for ER&A to claim rent until the Equipment was returned in 2021 because ER&A never asked for its Equipment to be returned; in fact, Inland Pipe alleges, it had to insist on returning the Equipment, which sat the at the port for months due to ER&A's delay in responding with requested shipping information.

Plaintiffs' arguments are more convincing. The Court concludes that reading the introductory paragraph of the agreement in conjunction with the term provision raises doubts as to the intention of the parties, which in any event must prevail over the words of an agreement if the two conflict. *See Merle v. West Bend Co.*, 97 D.P.R. at 409-10; 31 P.R. Laws Ann. § 3472. The Court thus looks beyond the four corners of the agreement to determine whether the parties

intended for the agreement to remain in effect beyond the relevant project. No reasonable jury would find that ER&A, which immediately stopped sending invoices and emails following up on payments once the project was completed, and never did so again for *four years*, still intended to collect monthly rent on the Equipment.

In addition, ER&A failed to mitigate damages. It never followed up about payments until this lawsuit, never asked for the Equipment to be returned, and undisputedly took several months to provide logistical information required to finalize the return of the Equipment in 2021.

Accordingly, the Court **DENIES** Defendants' motion for summary judgment and **GRANTS** summary judgment in favor of Plaintiffs.

\*   \*   \*

Summary judgment is **GRANTED** in favor of Plaintiffs. The Court **ISSUES** a declaratory judgment that Plaintiffs are not liable for any rent on the Equipment after the completion of the Woodlands Project in November 2016.

**IT IS SO ORDERED.**

Signed at Houston, Texas on May 2, 2022.

_____
Keith P. Ellison
United States District Judge